**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

UNITED STATES OF AMERICA                                                              PLAINTIFF

v.                                               NO. 4:07CR00103 JLH

BARRY J. JEWELL                                                                          DEFENDANT

## OPINION AND ORDER

Barry Jewell has again filed a motion asking the Court to order the government to release the *lis pendens* notice filed by the government giving notice that it claims an interest in Jewell's residence, which is owned in the name of Barry J. Jewell and Heather M. Jewell, Trustees of the Barry J. Jewell and Heather M. Jewell Living Revocable Trust. Earlier in this case, Jewell filed a motion asking the Court to strike the notice of *lis pendens* on the grounds that the notice constituted a pretrial restraint of substitute property, which is not authorized by 21 U.S.C. § 853(e). The Court denied that motion because a notice of *lis pendens* provides no legal restraint. *United States v. Jewell*, 538 F. Supp. 2d 1087, 1094 (E.D. Ark. 2008). Now Jewell argues that the notice of *lis pendens* is improper under Arkansas law because the residence is substitute property that may be forfeited to satisfy a money judgment but Arkansas law does not permit the use of a notice of *lis pendens* in actions seeking a money judgment. That argument has merit. Jewell's motion will be granted, and the government will be ordered to remove the notice of *lis pendens*.

### I.

The indictment charges that Barry Jewell conspired with Bobby Keith Moser to commit mail fraud in violation of 18 U.S.C. § 1341. The indictment also charges Jewell with three counts of money laundering and one count of tax evasion. A forfeiture allegation is included with reference

to each of the counts except the tax evasion count.  The first forfeiture allegation, which is the one at issue here, seeks forfeiture of $1,811,490.20 as representing the proceeds obtained as a result of the conspiracy to commit mail fraud.  The forfeiture allegation gives notice of the government's intent to seek substitute property pursuant to 21 U.S.C. § 853(p) in the event that the $1.8 million in cash cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.  The forfeiture of substitute property is sought pursuant to 21 U.S.C. § 853(p) as incorporated by 18 U.S.C. § 982(b).  The allegation regarding substitute property says that the government will seek forfeiture of properties of Jewell up to the $1.8 million amount including, but not limited to, his place of residence.

Shortly after the grand jury returned the indictment, the government filed a notice of *lis pendens* with the Circuit/County Clerk of Pulaski County identifying Jewell's residence and stating, "The subject real property is a substitute asset which may be forfeited to satisfy the money judgment set forth in Forfeiture Allegation I."  After Jewell filed the present motion arguing that the *lis pendens* statute does not authorize the filing of a notice of *lis pendens* in actions seeking money judgment, the government filed another notice of *lis pendens* identifying Jewell's residence and stating:

> The subject real property will be forfeited upon defendant's conviction of Count I of the indictment if all property constituting or deriving from proceeds obtained directly or indirectly as a violation of Count I of the indictment in the case identified herein cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or . . . has been commingled with other property which cannot be divided without difficulty.

## II.

The two notices of *lis pendens* filed by the government were filed pursuant to Ark. Code Ann. section 16-59-101, which provides:

> To render the filing of any suit at law or in equity in either a state court or a United States district court affecting the title or any lien on real estate or personal property constructive notice to a bona fide purchaser or mortgagee of any such real estate or personal property, it shall be necessary for the plaintiff . . . or his or her attorney or agent to file a notice of the pendency of the suit, for record with the recorder of deeds of the county in which the property to be affected by the constructive notice is situated.

It is well settled in Arkansas that the *lis pendens* statute does not apply to an action seeking only a money judgment because, by its terms, the statute applies only to actions affecting title to or any lien on real estate or personal property. *Health Betterment Found. v. Thomas*, 225 Ark. 529, 534, 283 S.W.2d 863, 866 (1955); *Tolley v. Wilson*, 212 Ark. 163, 165, 205 S.W.2d 177, 178 (1947); *see also Bank of Cave City v. Abstract & Title Co.*, 38 Ark. App. 65, 70, 828 S.W.2d 852, 855 (1992) ("Because the complaint, however, was merely for a money judgment and did not directly affect the title to the real estate, a *lis pendens* could not be filed.").  The Arkansas Supreme Court has upheld the imposition of sanctions against an attorney who filed notices of *lis pendens* with respect to ten properties that had no connection to the underlying lawsuit after the Supreme Court Committee on Professional Conduct "found no valid law or reason to support [the attorney's] having filed a *lis pendens* notice in his civil suit seeking money damages against [the defendant]." *Thompson v. Supreme Court Comm. on Prof'l Conduct*, 369 Ark. 186, ___ S.W.3d ___, 2007 WL 700957, at *2 (March 8, 2007).

The issue, then, is whether the government can use the Arkansas *lis pendens* statute in a criminal forfeiture proceeding in which the government seeks the forfeiture of money that represents

the proceeds of criminal activity and identifies real property as substitute property to be forfeited in the event that the money cannot be recovered for one of the reasons stated in 21 U.S.C. § 853(p)(1). In *United States v. Jarvis*, 499 F.3d 1196 (10th Cir. 2007), the Tenth Circuit held that the government could not use the New Mexico *lis pendens* statute to give notice that it would claim real property owned by the defendant as substitute property were the defendant to be convicted and the money that represented the proceeds of the criminal activity could not be recovered for one of the reasons provided in 21 U.S.C. § 853(p). *See also United States v. Kramer*, 2006 WL 3545026 (E.D.N.Y. Dec. 8, 2006). The Eighth Circuit has not ruled on this issue. *Jarvis* is on point, well reasoned, and consistent with the interpretation of 21 U.S.C. § 853 articulated by the Eighth Circuit in *United States v. Field*, 62 F.3d 246 (8th Cir. 1995).

The government concedes that the *lis pendens* statute does not authorize the filing of a *lis pendens* to encumber property to satisfy a potential money judgment but nevertheless argues that *Jarvis* was wrongly decided. The government argues that the Tenth Circuit in *Jarvis* mistakenly failed to distinguish between an order to forfeit substitute property and a money judgment, which, the government says, is the same mistake its attorneys made when they filed the first notice of *lis pendens* in this case. The government also argues that the *Jarvis* opinion is wrong in its holding that the government's interest in substitute property does not relate back to the time of the commission of the crime.

On the first argument, the government notes that entry of a money judgment is not a required predicate to the forfeiture of substitute property. The government also says that the forfeiture of substitute property and the entry of money judgments are separate remedies that spring from independent sources inasmuch as the authority to order the forfeiture of substitute property is found

4

in section 853(p), whereas the authority to enter a forfeiture order in the form of a money judgment

is based upon judicial interpretation of section 853(a).  Thus, the government says, because they are

derived from separate sources, the forfeiture of substitute property and the entry of a forfeiture order

in the form of a money judgment are separate remedies not dependent on each other.  While all of

that may be true, the fact remains that what the government seeks in the first forfeiture allegation in

the indictment is money – "$1,811,490.20, representing the amount of proceeds obtained as a result

of the offense of conspiracy to commit mail fraud, as alleged in Count 1."  If the government obtains

a conviction on Count 1 a forfeiture order in the form of a money judgment may be entered in that

amount pursuant to 21 U.S.C. § 853(a).[1]  Even if the forfeiture order does not use the term "money

judgment" or "judgment," the substance of an *in personam* order directing the forfeiture of a sum

of money can hardly be distinguished, so far as the *lis pendens* statute is concerned, from a money

judgment.  It is true, of course, that the authority to enter an *in personam* order directing the

forfeiture of the proceeds of criminal activity derives from section 853(a), whereas the authority to

order the forfeiture of substitute property arises from section 853(p), but that distinction is parallel

to rather than inconsistent with the fact that in civil cases the rule authorizing entry of a judgment,

---

[1] *United States v. Vampire Nation*, 451 F.3d 189, 201-02 (3d Cir. 2006) (expressly rejecting the argument that a forfeiture order must order the forfeiture of specific property; as with an in personam order, it may take the form of a judgment for a sum of money equal to the proceeds the defendant obtained from the offense); *United States v. Misla-Aldarondo*, 478 F.3d 52, 73-74 (1st Cir. 2007) ("If the Government has proven that there was at one point an amount of cash that was directly traceable to the offense, and that thus would be forfeitable under 18 U.S.C. § 982(a), that is sufficient for a court to issue a money judgment, for which the defendant will be fully liable whether or not he still has the original corpus of tainted funds – indeed, whether or not he has any funds at all."); *United States v. Hall*, 434 F.3d 42, 59 (1st Cir. 2006) (stating that "the Government need not prove that the defendant actually has the forfeited proceeds in his possession at the time of conviction"; it is entitled to a money judgment whether the defendant has the forfeited proceeds, or any other assets, in his possession at all); *United States v. Casey*, 444 F.3d 1071, 1074-76 (9th Cir. 2006) (same).

FED. R. CIV. P. 54, is separate from the rule authorizing seizure of property to satisfy the money judgment, FED. R. CIV. P. 69.  Here, if Jewell is convicted on Count 1, the government may obtain an *in personam* forfeiture order requiring Jewell to forfeit $1,811,490.20.  If Jewell pays that amount from cash on hand, liquid assets, or money borrowed from friends, relatives, or a bank, the issue of whether the residence should be forfeited as substitute property under section 853(p) will never arise. If he is convicted, a forfeiture order is entered, and he is unable to pay the amount that he is ordered to forfeit, then and only then will the Court consider whether to order the forfeiture of substitute property under section 853(p).  Substitute properties to be forfeited under section 853(p) need not be identified until that stage of the case because "their specific identity does not matter for forfeiture purposes."  *United States v. Hatcher*, 323 F.3d 666, 673 (8th Cir. 2003).  Hence, the nature of the government's interest in Jewell's residence as potential substitute property is in substance no different than the nature of the interest that a plaintiff in a civil case has in real property owned by the defendant.  In a civil case, if the plaintiff obtains a judgment and the defendant pays the judgment, the plaintiff never has any interest in the defendant's real property; the plaintiff's interest in the defendant's real property would only arise after the plaintiff obtained a judgment and the defendant failed to pay the judgment within the specified time after its entry, whereupon the plaintiff might levy on the real property; all of which is parallel to the process here if the government obtains a conviction on Count 1 and prevails on forfeiture allegation.

This comparison between substitute property in this case, where the government seeks forfeiture of a sum of money as proceeds of a criminal act, and a civil case in which a plaintiff seeks money damages, assumes that the government's interest in substitute property does not relate back to the time of the criminal act, which of course the government disputes.  The government argues

6

that its interest in substitute property does relate back to the time of the criminal act.  The only circuit to hold that the relation back doctrine applies to substitute property and that title to substitute property vests in the government as of the date of the offense is the Fourth Circuit.  *See In re Bryson*, 406 F.3d 284, 291 (4th Cir. 2005); *United States v. McHan*, 345 F.3d 262, 270-72 (4th Cir. 2003).  The Eighth Circuit has not ruled on the issue of whether the government's interest in substitute property relates back to the date of the criminal act.

The statute providing for the government's interest in forfeitable assets to relate back to the date of the criminal act is 21 U.S.C. § 853(c), which provides, in pertinent part, "All right, title, and interest in property described in subsection (a) of this section vests in the United States upon the commission of the act giving rise to forfeiture under this section."  Subsection (a), as noted above, is the provision that mandates forfeiture of proceeds of criminal acts and property used to commit criminal acts.  Section 853(c) does not say that all right, title, and interest described in subsection (p) vests in the United States upon the commission of the criminal act.

While the Eighth Circuit has not ruled on the issue of whether the government's interest in substitute property relates back to the date of the criminal act, it has ruled upon a nearly identical issue of statutory construction.  Section 853(e)(1) authorizes a pretrial restraining order or injunction "to preserve the availability of property described in subsection (a) of this section for forfeiture . . . ."  In *United States v. Field*, the government argued that the district court erred in vacating a pretrial order restraining the defendant from dissipating substitute property.  The Eighth Circuit held that the plain language of section 853(e) authorized pretrial restraint only of property described in section 853(a) and, by its terms, gives the court no authority to authorize pretrial restraint of substitute property described in section 853(p).  *Field*, 62 F.3d at 248-49.  When the Eighth Circuit decided

7

*Field*, the other circuits were split on the issue of whether the court could order pretrial restraint of substitute property. *Id*. at 248. The Fourth Circuit was one of only two circuits that authorized pretrial restraint of substitute property. *Id*. (citing *In re Billman*, 915 F.2d 916, 921 (4th Cir. 1990), *cert. denied*, 500 U.S. 952, 111 S. Ct. 2258, 114 L. Ed. 2d 711 (1991)); *see also Jarvis*, 499 F.3d at 1204 n.8. Nothing in the statutory text or in *Field* suggests that the Eighth Circuit would hold that the scope of section 853(c) extends to substitute property, as well as proceeds and instruments of the crime, whereas section 853(e) does not. Subsection (c) and subsection (e) contain the identical phrase, "property described in subsection (a) of this section . . . ." The holding in *Jarvis* that section 853(c) does not apply the relation back doctrine to substitute property is consistent with the holding of the Eighth Circuit in *Field* that section 853(e) does not permit pretrial restraint of substitute property, whereas the reasoning of the Fourth Circuit in *McHan* is inconsistent with the Eighth Circuit in *Field*. *Compare McHan*, 345 F.3d at 270-72 (relying on the liberal construction clause, 21 U.S.C. § 853(a), and the purposes of the criminal forfeiture statute to hold that the relation back doctrine applies to substitute property) *with Field*, 62 F.3d at 248-49 (rejecting those same arguments as sufficient reason to authorize pretrial restraint of substitute assets).

In summary, the Arkansas *lis pendens* statute does not permit the filing of a notice of *lis pendens* in a case in which the plaintiff's only potential interest in real property is the possibility that the real property may be needed to satisfy a money judgment if the plaintiff prevails on the merits and obtains a judgment that the defendant does not satisfy. The government's interest in Jewell's residence is in substance the same interest that the plaintiff in a civil case has in real property that may be needed to satisfy a money judgment. If the government prevails on the merits, and if the government obtains an *in personam* forfeiture order requiring Jewell to forfeit the proceeds obtained

from the conspiracy to commit mail fraud, then the government may pursue an order directing Jewell to forfeit his residence as substitute property under section 853(p).  If the government's interest in substitute property related back to the date of the criminal act, it might be said that the government has a present interest that would permit the filing of a notice of *lis pendens*, but section 853(c) provides only that the government's interest in property described in subsection (a) vests at the time the criminal act is committed, and neither that statute nor any other provides that the government's interest in substitute property vests at the time the criminal act is committed.  Unlike property forfeitable under section 853(a), Jewell's residence is nothing more than "a potential asset source that may be used to satisfy a shortfall in a potential money judgment."  *Kramer*, 2006 WL 3545026, at *11.  "The United States cannot convert § 853(p) substitute property to § 853(a) forfeitable property merely by identifying the former in the indictment.  There is, therefore, no reason the usual prohibition on using a *lis pendens* in anticipation of a money judgment would not apply in this situation."  *Jarvis*, 499 F.3d at 1206.

## CONCLUSION

For the reasons stated above, Jewell's motion to release property is GRANTED.  Documents #84 and #98.  The government is hereby ordered to remove the *lis pendens* giving notice that it claims an interest in Jewell's residence and to do so forthwith.

IT IS SO ORDERED this 4th day of June, 2008.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE