## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

UNITED STATES OF AMERICA                                    PLAINTIFF

v.                              NO. 4:07CR00103 JLH

BARRY J. JEWELL                                             DEFENDANT

## OPINION AND ORDER

Barry J. Jewell has filed a motion for reconsideration of this Court's order striking "records

of discovery"[1] filed as Documents #79 and #82.  The heart of the defendant's argument is:

> The specific purpose for filing the motion was counsel's experience (over the past
> 34 years) with discovery disputes that arise during trial where the defense claims it
> has not received a document and the government claims that it has been provided.
> Counsel's experience has also been that in those situations, most courts routinely and
> consistently give the government the "benefit of doubt" and decline to strike or
> exclude the document(s) from evidence without the defense establishing some type
> of prejudice.

The motion states that defense counsel has routinely filed "records of discovery" in cases over the

past ten years, naming two specific cases in this Court and two in courts of the State of Arkansas as

examples of cases in which he has filed "records of discovery."  The motion also argues that the

efficacy of the "record of discovery" is confirmed by subsequent events in this case showing that the

government has not been forthcoming in producing documents.[2]  The motion further argues that the

---

[1] Each "record of discovery" is a list of documents provided by the United States Attorney. Defense counsel filed the "records of discovery" in the court record, the government moved to strike the "records of discovery," and the Court previously granted that motion.

[2] The defendant has declined to request discovery pursuant to Fed. R. Crim. P. 16(a)(1)(E) so that he can avoid the reciprocal discovery obligation imposed by Rule 16(b)(1)(A).  He has requested statements under Rule 16(a)(1)(A) and (B).  After resolving a dispute as to what constitutes a "statement," the Court ordered that statements be produced by March 9, 2008.  The defendant has moved *in limine* to exclude certain documents produced after that date.

government cited no authority in its motion to strike, in violation of Local Rule 7.2, and that the Court's order also contained no authority. Finally, the motion argues that a defendant in a criminal case is entitled to make a record so that if an appeal becomes necessary an appellate court will not disregard an issue on the ground that the record in the trial court is inadequate.

Although the Court accepts as true defense counsel's representation that he has routinely filed "record of discovery" for the past ten years, the undersigned can only respond that in his experience as a law clerk, a lawyer in private practice, and as a judge (altogether) for twenty-four years, defense counsel's practice is peculiar to him. That one lawyer has engaged in a practice for ten years does not endow that practice with legal significance. It would be different if the practice rose to the level of a custom. "Customes are defined to be a Law, or Right not written, which established by long use, and the consent of our Ancestors, hath been, and is daily practised." II THE SELECTED WRITINGS OF SIR EDWARD COKE 563 (Steve Sheppard ed., 2003); *see also* WILLIAM BLACKSTONE, 1 COMMENTARIES *68, *76 (stating that a custom is a practice of "general reception and usage" that had been used so long that "the memory of man runneth not to the contrary"). In this context, the Court would be inclined to accept the argument that it is a custom for "records of discovery" to be filed upon a showing that some significant number of practitioners have filed them since, say, 1975, when Rule 16 of the Federal Rules of Criminal Procedure was amended to provide for discovery by request rather than by motion. *See infra* at 7. The Court is convinced that the practice of filing "records of discovery" is not the custom; that the custom is to the contrary; and, more importantly, that it is neither necessary nor helpful to the avoidance or resolution of discovery disputes for one party or both to file "records of discovery."

It is not difficult to produce or receive documents in discovery in a manner that will enable the parties later to know what documents were and what documents were not produced.  The easiest and most efficient way to make sure that both sides agree as to what documents were and were not produced, at least when the volume of documents is not unduly large, is for the party producing the documents to prepare an inventory of the documents that are being produced, provide that inventory along with the documents to the party receiving them, and then ask the party receiving the documents to confirm that the inventory is accurate either by signing the inventory or by writing a letter.  If the party receiving the documents, after reviewing them and the inventory, concludes that the inventory is inaccurate, the parties can and should review the inventory and the documents together and then supplement the document production to make it conform to the inventory or add to the inventory to make it conform to the document production, whichever is needed.  When the parties reach agreement that the inventory is accurate, whenever a question arises as to whether a document was produced on that occasion, the parties can resolve that dispute by reference to the inventory.

If, however, the party producing the documents does not prepare such an inventory but merely produces a stack of documents, the party receiving the documents can then prepare an inventory, send the inventory to the party that produced the documents, and ask that party to confirm the accuracy of the inventory.  Then, if the party that produced the documents believes that the inventory is inaccurate, the parties can meet, review the inventory and the documents together, and then either supplement the document production or add to the inventory, whichever is needed.

A somewhat more modern method is for the party producing the documents, or the party receiving them, to place on all of the documents a sequence of numbers, prefaced perhaps with an abbreviation or acronym to signify their source, whereby the documents are numbered in sequence.

3

Then, either in conjunction with or separate from an inventory, the party who has placed the sequence of numbers on the documents can ask the other party to confirm that the documents produced include all of those and only those that bear that sequence of numbers. *Cf.* MARK G. WALKER, DISCOVERY SKILLS §§ 3.4, 3.7 (2000); STACEY HUNT & RHONDA GREGORY, HOT DOCS & SMOKING GUNS: MANAGING DOCUMENT PRODUCTION AND DOCUMENT ORGANIZATION §§ 9.1-9.4 (1995). Again, if the parties disagree as to whether the documents produced actually include all of those and only those that bear that sequence of numbers, then they would need either to supplement the document production or amend the description as to what document numbers are included in the documents that were produced.

More technologically advanced means of producing documents have given rise to other means of determining what documents were produced and what documents were not produced. One common method of producing documents is to have them copied and scanned onto a disk, a CD, or some other technological means of storing information. The disk, CD, or other item of technology containing the information then can be copied, so that both sides will have an identical disk or CD that will contain all of the documents and only those documents that were produced.

These are some of the ways in which, to the knowledge of the undersigned, lawyers who produce and receive documents in litigation routinely and ordinarily produce and receive them in such a way as to make sure that both sides can always determine what was and was not produced. Of course, all of these methods require communication between counsel or at least between their paralegals. The two sides need to talk; but, if they do, documents can be produced and received in such a way as to make sure that both sides know what was and was not produced. It is apparent that the lawyers in this case have in fact prepared inventories of the documents produced and have in fact

4

numbered them, so those means of identifying what has been produced are known to them.  Instead of talking with the prosecutors, however, defense counsel has chosen to file his inventory in the court record as though it would a pleading, a motion, or some other paper that acquires significance by being filed in the court record.

As a practicing attorney, the undersigned participated in trials in cases in which hundreds of thousands of pages of documents were produced without any dispute arising at trial as to whether a document had been produced.  It was always possible to determine which documents were produced by which party on which occasion, even though no "records of discovery" were filed in any of those cases, because in every instance we used one of the methods described above.  The undersigned has served on the bench for four years and during that time has presided over more than forty trials, including at least four criminal cases that involved a large number of documents.  In no case, civil or criminal, over which I have presided has there been a dispute at trial regarding whether a document had been produced.  On some occasions, one side has questioned whether a document was produced, but, after both sides reviewed their records, they were able to agree either that the document had been or had not been previously produced.  Experience shows that it is not necessary for parties to file "records of discovery" in order to avoid or resolve disputes as to whether a document has been produced.

Nor would it be helpful to the avoidance or resolution of discovery disputes to have a "record of discovery" filed in the court records.  Suppose, for example, that defense counsel files a "record of discovery," and the government ignores it, but at trial the government seeks to introduce a document to which defense counsel objects on the ground that it was not produced and was not listed in his "record of discovery."  What would be the effect of the filing of the "record of discovery" in

that instance?  So far as the Court can determine, filing the "record of discovery" in that instance would have no effect at all.  The government would have been entirely within its rights to ignore the "record of discovery" and, if it had done so, there would be no rule or law holding that the government was estopped from disputing the accuracy of the "record of discovery" at trial.  Even if defense counsel filed a "record of discovery" and a dispute arose at trial as to whether a document was or was not produced, the issue before the Court and the bases for resolving it would be the same as if no"record of discovery" had been filed.  If the prosecutor were to say that he had produced a document, and defense counsel were to deny it, it would be one lawyer's word against the other.[3] Each could, if he chose, show the Court his file indicating what had been produced or put a member of his staff on the witness stand to testify as to what had been produced, but that situation would be the same whether or not defense counsel had filed a "record of discovery."  In the absence of some rule that required the party receiving documents to file a response to the "record of discovery," filing such a record helps neither to avoid or to resolve discovery disputes.

It is true that there is no rule prohibiting filing a "record of discovery,"[4] but, if the rules contemplated that such records would be filed, the rules would also direct when they should be filed, when and under what circumstances responses to them should be filed, and what the consequences

[3] In this case, the government does not dispute that some documents were produced after March 6, 2008, either because they were inadvertently omitted from the first document production or because they were first received after the initial document production.  So far, there is no dispute as to which documents were produced when; if there were such a dispute, the fact that "records of discovery" were filed in the court record would not resolve it.

[4] The late Monsignor George Tribou, principal of the Catholic High School for Boys in Little Rock for more than 40 years, once began the morning announcements at the high school by saying that he tried to avoid the proliferation of rules, and so it was his practice to promulgate a new rule only when experience taught him that the new rule was necessary.  He then announced a new rule: boys may not flush sweaters down the toilet.  No rule in this Court prohibits the filing of "records of discovery," but, so far, no such rule has been needed.

would be of not filing "records of discovery" or responses to them. Because no rule provides when "records of discovery" should be filed, the contents of such records, when responses to them should be filed, the contents of such responses, or what the consequences would be either of not filing "records of discovery" or not filing a response, the Court can only assume that the rules do not contemplate that parties will file "records of discovery." That assumption is bolstered by the fact that the Advisory Committee notes to the 1975 amendments to Rule 16 of the Federal Rules of Criminal Procedure state:

> As proposed to be amended, the rule provides that the parties themselves will accomplish discovery—no motion need be filed and no court order is necessary. The court will intervene only to resolve a dispute as to whether something is discoverable or to issue a protective order.
>
> * * *
>
> The Committee agrees that the parties should, to the maximum possible extent, accomplish discovery themselves. The court should become involved only when it is necessary to resolve a dispute or to issue an order pursuant to subdivision (d).

*See also* 2 CHARLES ALAN WRIGHT, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL § 257 (3d ed. 2000). Similarly, Local Rule 7.2(g) requires that parties confer in good faith regarding any discovery dispute and file a motion regarding that dispute only if the parties, after conferring in good faith, are unable to resolve it without court intervention. Thus, the rules establish a regime in which it is contemplated that the parties will accomplish discovery among themselves and will attempt to resolve discovery disputes among themselves so that the court is involved only when necessary.

Finally, the motion for reconsideration argues that a criminal defendant is entitled to make a record, and of course that is true. The order striking the "records of discovery" said that such records should not be filed "unless they are relevant to a pending motion." Thus, the order contemplated that a "record of discovery" could and should be filed when relevant to a motion to be

decided, so, according to this Court's order previously entered, the defendant would have his right to make a record whenever there was an issue to be decided; but when there is no issue before the Court, there is no need for a record.

For all of these reasons, defendant Barry J. Jewell's motion for reconsideration is DENIED. Document #117.

IT IS SO ORDERED this 29th day of July, 2008.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE

8